# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

INNOVATION VENTURES, LLC
d/b/a LIVING ESSENTIALS,

      Plaintiff/Counter-Defendant,

                                  Case No. 08-11867

vs.                               Hon. Lawrence P. Zatkoff

N.V.E., INC.,

      Defendant/Counter-Plaintiff.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 15, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Plaintiff's motion for partial summary judgment of Defendant's ninth counterclaim [dkt 131]; Plaintiff's motion for summary judgment on Defendant's amended counterclaims related to Plaintiff's May 29, 2008, letter [dkt 132]; Plaintiff's motion for summary judgment of infringement of the 5-hour ENERGY trademark [dkt 133]; Defendant's motion for summary judgment on false advertising [dkt 135]; Defendant's motion for summary judgment of no trademark infringement [dkt 137]; Defendant's motion for sanctions [dkt 192]; Defendant's motion to strike exhibits relied upon by Plaintiff in its summary judgment motions (dkts 131-133) pursuant to Fed. R. Civ. P. 26(e), 37(c) and 56 [dkt 169]; Defendant's motion to strike the

expert testimony of Dr. Dan Sarel [dkt 202]; Defendant's motion to strike the testimony of Drs. Michael Rappeport and Howard Marylander [dkt 203]; and Defendant's motion to strike exhibits relied upon by Plaintiff in its response brief (dkt 158) [dkt 208].[1]  The motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. The motions will be addressed in turn.

## II. BACKGROUND

Plaintiff markets and sells a two-ounce energy beverage using the "5-hour ENERGY" trademark.  Defendant markets and distributes a two-ounce energy drink featuring a "6 Hour POWER" mark.  Plaintiff has alleged a common law trademark infringement claim against Defendant under the Lanham Act, 15 U.S.C. § 1125(a).

Defendant has asserted counterclaims for: (1) violation of the Federal Anti-Cybersquating Consumer Protection Act, 15 U.S.C. § 1125(d); (2) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (3) business and product disparagement; (4) tortious interference with contractual relations; (5) tortious interference with business relationships; (6) monopolization in violation of the Sherman Act, 15 U.S.C. § 2; (7) attempted monopolization in violation of the Sherman Act, 15 U.S.C. § 2; (8) violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903; and (9) cancellation of trademark, 15 U.S.C. § 1119.

---

[1]The parties have each filed several motions for leave to file briefs in excess of the page limits set forth in the Local Rules.  In the interests of justice, Defendant's motions for leave to file excess pages [dkts 136, 188 and 213] are granted, and Plaintiff's motions for leave to file excess pages [dkts 156, 199 and 226] are granted.

## III.  LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).  "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

# IV. ANALYSIS

## A. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT IX OF DEFENDANT'S AMENDED COUNTERCOMPLAINT

In its ninth counterclaim, Defendant argues that Plaintiff fraudulently procured its trademark registration of the 5-hour ENERGY mark. Defendant avers that when Plaintiff registered its 5-hour ENERGY trademark with the Supplemental Register of the United States Patent and Trademark Office (the "'077 registration"), Plaintiff swore under oath that it used the 5-hour ENERGY trademark in commerce on Homeopathic Supplements and Pharmaceutical Preparations. Defendant maintains that this representation is not—and never has been—true. Because Defendant believes Plaintiff obtained its registration fraudulently, Defendant requests that the Court cancel the '077 registration of the 5-hour ENERGY trademark.

Pursuant to 15 U.S.C. § 1119, "[i]n any action involving a registered mark, the court may determine the right to registration [and] order the cancellation of registrations, in whole or in part . . . ." In the Court's August 4, 2009, order granting Defendant's motion to amend its pleadings, the Court stated that even though Plaintiff voluntarily dismissed its claim based on the '077 registration, leaving only its claims brought under common law, this action involves a registered mark because Defendant's counterclaims specifically mention Plaintiff's "wrongful attempts to enforce its trademark."

However, in order for Defendant to have standing to assert its claim against Plaintiff based on the '077 registration, the Court finds that Defendant must first demonstrate that it has suffered an injury due to the registration. *See Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 523-24 (6th Cir. 2001) ("To satisfy Article III's standing requirements, a plaintiff must show: '(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)).

In support of its motion, Plaintiff argues that there is no evidence showing that Defendant suffered an injury due to the '077 registration. Specifically, Plaintiff points out that Defendant's damages expert failed to identify any damages based on the '077 registration, and that a supplemental registration cannot cause damages as a matter of law because it confers no substantive rights. *See In re Federated Dep't. Stores*, 3 U.S.P.Q.2d (BNA) 1541 (TTAB 1987) ("It is overwhelmingly agreed that a Supplemental Register registration is evidence of nothing more than the fact that the registration issued on the date printed thereon . . . [i]t is entitled to no presumptions of validity, ownership, or priority.") (citations omitted).

It its response, Defendant explains at great length why Plaintiff's '077 registration should be cancelled, including that the registration was obtained by fraud and that Plaintiff lacks ownership of the registration, but Defendant does not rebut Plaintiff's assertion that Defendant lacks standing to assert this counterclaim. Instead, Defendant attempts to explain why its expert did not calculate damages caused by the '077 registration, and it then states that "[Defendant's] Counterclaim sets forth that [Defendant] has been damaged by the registration." Defendant, however, cannot defeat Plaintiff's motion for summary judgment by resting on its pleadings. *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) ("[T]he nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.") (citing *Anderson*, 477 U.S. at 248-49).

Furthermore, the Court notes that the relief Defendant seeks lies in the discretion of the Court; thus, even were the Court to accept Defendant's allegations as true, § 1119 imposes no duty upon the Court to act. 15 U.S.C. § 1119 (stating that "the court *may* . . . order the cancellation of registrations") (emphasis added). Considering that (1) Plaintiff is not directly asserting the '077 registration against Defendant in this action, (2) Defendant has failed to demonstrate how the '077 registration has caused it to suffer an injury, and (3) Defendant has not sought cancellation of the '077 registration with the United States Patent and Trademark Office, the Court declines to take action pursuant to § 1119. Therefore, the Court grants Plaintiff's motion for summary judgment with respect to Defendant's ninth counterclaim, brought under 15 U.S.C. § 1119.

**B.** **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I-VIII OF DEFENDANT'S AMENDED COUNTERCOMPLAINT**

**1.** **Count I - Cybersquating**

In Count I of Defendant's amended countercomplaint, Defendant alleges that Plaintiff violated the Anti-Cybersquating Consumer Protection Act, 15 U.S.C. § 1125(d)(1), when Plaintiff registered the following internet domain names: "6hourpower.com" and "sixhourpower.com".

Under 15 U.S.C. § 1125(d)(1),

> (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that—
>
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36, United States Code.

Plaintiff avers that there is an absence of evidence to prove that (1) Defendant is entitled to protection under the Anti-Cybersquating Consumer Protection Act and (2) Defendant registered its domain names in bad faith. Defendant's response brief does not address Plaintiff's arguments with respect to this counterclaim. Therefore, the Court can only assume that Defendant concedes this issue and agrees that it cannot make a prima facie case under the Anti-Cybersquating Consumer Protection Act. *See Ctr. For Biological Diversity v. Rural Utils. Serv.*, No. 5:08-292-JMH, 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion.") (citing *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008)). Accordingly, Plaintiff's motion for summary judgment is granted with respect to Defendant's counterclaim under the Anti-Cybersquating Consumer Protection Act.

### 2.    Count II - False Advertising

In Count II of its amended countercomplaint, Defendant alleges that Plaintiff's distribution of a letter entitled, "Legal Notice" ("the legal notice"), violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false advertising.[2]    The Court will briefly explain the

---

[2]The parties have filed cross-motions for summary judgment with respect to this counterclaim.

background surrounding the legal notice. In March 2008, Plaintiff brought suit against N2G Distributing, Inc. and Alpha Performance Labs due to their sale of a competing two-ounce energy shot sold under the name "6 Hour ENERGY". Upon motion filed by Plaintiff in that case, the court entered a preliminary injunction in April 2008, which (1) directed the defendants to recall the 6 Hour ENERGY shot from all store shelves, and (2) enjoined the defendants from manufacturing, distributing, shipping, advertising, marketing, promoting, transferring, selling, or offering to sell the 6 Hour ENERGY shot. The basis for granting the preliminary injunction was trade dress infringement. Subsequently, Plaintiff sent the following legal notice to over 100,000 retailers, *i.e.*, convenience stores and truck stops, which provided in relevant part:

> **RECALL OF "6 HOUR" SHOT ORDERED**
> *Court orders immediate stop to manufacturing, distributing and sale of 6 Hour Energy shot.*
>
> Dear Customer,
>
> We are pleased to announce that we won a decision against a "6 Hour" energy shot that closely mimicked 5-Hour Energy®. The United States District Court, in Case No. 08-CV-10983, issued a preliminary injunction ordering the immediate recall of all the "6 Hour" product, and told its manufacturer to stop making, distributing and selling it.
>
> If you have any of the "6 Hour" energy shots in your store(s) or warehouse(s) contact the product's manufacturer or your distributor to return the product immediately.
>
> **DO NOT RETURN ANY 5-HOUR ENERGY®.** It can be difficult to tell 5-Hour Energy® apart from the "6 Hour" knockoff product. If you have any questions, please call us at 248-950-1700 ext. 217.

In April 2008, Plaintiff also brought suit against BDI Marketing, Inc., which sold a product with "6 Hour ENERGY!" on the label. In July 2008, BDI Marketing, Inc. moved for a preliminary injunction related to the legal notice, alleging false advertising under Section 43 of the Lanham Act.

In his Report and Recommendation, United States Magistrate Judge Steven Pepe recommended that the injunction be granted, concluding that BDI Marketing, Inc. demonstrated a likelihood of success on the merits of its claims that the legal notice was misleading and had a tendency to deceive its intended audience. *Living Essentials v. BDI Marketing, Inc.*, No. 2:08-cv-12711, 2008 U.S. Dist. LEXIS 116678, at *7-13 (E.D. Mich. Oct. 28, 2008). United States District Judge Gerald E. Rosen adopted Magistrate Pepe's Report and Recommendation and granted the requested preliminary injunction. *Living Essentials v. BDI Marketing, Inc.*, No. 2:08-cv-12711, 2009 U.S. Dist. LEXIS 26535, at *12-13 (E.D. Mich. Mar. 30, 2009). Defendant claims that as a result of the legal notice, it suffered approximately $3.4 million in damages.

The Sixth Circuit uses a five-element test to analyze liability for false advertising under Section 43(a) of the Lanham Act:

> (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (citing *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)). In an action for damages based on misleading statements, the claim "can only be established by proof of actual deception (*i.e.*, evidence that individual consumers perceived the advertising in a way that misled them about the plaintiff's product)." *Am. Council of Certified Podiatric Physicians and Surgeons*, 185 F.3d at 614. "Successful plaintiffs usually present evidence of actual deception through consumer surveys." *Id.* at 616 (citation omitted). In an action

for injunctive relief based on misleading statements, the claim can be established by showing that the statements have a tendency to deceive the intended audience. *Id.* at 618. Where the statements at issue are literally false, as opposed to true but misleading, actual deception is presumed. *Id.* at 613.

Plaintiff argues that there is insufficient evidence to support a finding that the legal notice actually deceived a substantial portion of its intended audience. In response, Defendant argues that the legal notice was literally false, and that actual deception is therefore presumed. Alternatively, Defendant contends that the following evidence demonstrates that a substantial portion of the intended audience was actually deceived: (1) distributors and brokers contacted Defendant about returning 6 Hour POWER; (2) distributors and brokers called and wrote to Defendant with inquires about the legal notice; (3) distributors reported confusion among retailers about whether 6 Hour POWER had been recalled; (4) a distributor complained that he lost accounts and sales for 6 Hour POWER because of the legal notice; and (5) a trade journal article reported that the legal notice created confusion among retailers.

### a). *Claim for Damages*

While Defendant argues that deception is presumed because the legal notice is literally false, the Court disagrees. In support of its argument that the legal notice is false, Defendant relies on the opinions of Magistrate Pepe and Judge Rosen discussed *supra*. The Court first notes, however, that the decisions of Magistrate Pepe and Judge Rosen are not binding upon this Court, especially considering that they involved different parties and circumstances, and took place at the preliminary injunction stage. *See William G. Wilcox, D.O., P.C. Employees Defined Benefit Pension Trust v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989) ("[A] trial court's disposition of the substantive

issues joined on a motion for extraordinary relief is not dispositive of those substantive issues on the merits."). Second, the Court notes that Judge Rosen's opinion and order adopting the Report and Recommendation did not state that the legal notice was false; rather, Judge Rosen concluded only that the legal notice was misleading. *See BDI Marketing, Inc.*, 2009 U.S. Dist. LEXIS 26535, at *4-6. Third, the Court disagrees with Magistrate Pepe's conclusion that the legal notice falsely stated that Plaintiff won a decision against "a '6 Hour' shot." According to Magistrate Pepe, "Living Essentials did not win a decision against a ''6 Hour' energy shot' as stated in the press release, but rather won a decision against N2G's use of a [sic] overall product image (i.e. - the label and bottle) that was confusingly similar to Living Essentials' overall product image." *BDI Marketing, Inc.*, 2008 U.S. Dist. LEXIS 116678, at *7-13. However, it is undisputed that Plaintiff was awarded injunctive relief against the producer of an energy shot bearing the name "6-Hour", as stated in the notice. Stating that the decision was based on the use of an overall product image would have, perhaps, provided more clarity, but the absence of the explanation for the injunctive relief does not render the statement literally false. Thus, Defendant must demonstrate actual deception of a substantial portion of the legal notice's intended audience in order to recover damages.

Defendant does not dispute Plaintiff's assertion that the intended audience for the legal notice was retailers, *i.e.*, convenience store and truck stop entities. Therefore, the Court need only consider the effect that the legal notice had on retailers. While Defendant presents numerous statements from its employees, distributors, and brokers, who reported being confused by the legal notice, such evidence fails to reflect how the intended audience of retailers reacted. Defendant attempts to show that retailers were confused by the legal notice through statements from its employees, distributors, and brokers, who state that various unidentified retailers contacted them

because they were confused by the legal notice. However, the Court finds that these out of court statements constitute inadmissible hearsay, which cannot raise a genuine issue of material fact as to confusion. *See Interactive Prods. Corp. v. A2Z Mobile Office Solutions, Inc.*, 195 F. Supp. 2d 1024, 1033 (S.D. Ohio 2001) ("[T]he only evidence of deception are the hearsay statements of a customer . . . who told Comeaux that two of *his* customers were confused by the Announcement. Defendants argue correctly that the hearsay statements of [the] customer are inadmissible and, therefore, do not create a genuine issue of fact on deception."). Defendant does offer the direct testimony of Allen Cipinko, a distributor who complained that he lost accounts and sales for 6 Hour POWER following distribution of the legal notice, but given that the legal notice was distributed to over 100,000 retailers nationwide, this hardly constitutes evidence that a significant portion of the intended audience was actually deceived. The Court also notes that while "[s]uccessful [claimants] usually present evidence of actual deception through consumer surveys," Defendant has presented none in this case. *Am. Council of Certified Podiatric Physicians and Surgeons*, 185 F.3d at 616.

Moreover, the Sixth Circuit has equated deception with being "tricked into believing an untruth" about a product; mere confusion and inquiry are insufficient. *See id.* at 617 ("While this letter may demonstrate some confusion by Coles, it does not show that he was tricked into believing an untruth about plaintiff."). Here, Defendant has not provided the Court with admissible evidence showing that a substantial portion of the 100,000 plus retailers who received the legal notice were tricked into believing that 6 Hour POWER had been recalled. Instead, Defendant has merely provided evidence of confusion and inquiry among retailers, as noted in the trade journal publication cited by Defendant, and that Defendant spent an "inordinate amount of time responding to such confusion." Thus, the Court finds that Defendant has failed to establish, with admissible evidence,

sufficient facts demonstrating that the legal notice actually deceived a substantial portion of the intended audience.

### b). *Claim for Injunctive Relief*

In Defendant's reply brief, Defendant asserts that it also seeks injunctive relief in the form of corrective advertising, which would only require it to prove that the legal notice had a tendency to deceive the intended audience. As discussed *supra*, although Magistrate Pepe and Judge Rosen concluded in a different case that the legal notice had a tendency to deceive its intended audience, their opinions are not binding upon this Court. This Court finds that a plain reading of the legal notice would not trick a reasonable viewer into believing that 6 Hour POWER had been recalled. The letter truthfully stated that Plaintiff won "a" decision against "a" 6 Hour energy product, and that "a" 6 Hour product had been recalled. Nowhere did the letter state or imply, as Defendant contends, that "all" products bearing the name "6 Hour" had been recalled. At worst, the legal notice should have caused the intended audience to inquire as to which product bearing the name "6 Hour" had been recalled; there was no language that could have tricked a reasonable viewer into believing that it applied specifically to 6 Hour POWER. The Court acknowledges that the legal notice was ambiguous in that it did not state which product had been recalled. However, the Court is unwilling to hold that a statement tends to deceive merely because it is ambiguous. Defendant has not provided the Court with any legal authority standing for such a proposition. Thus, the Court finds that Defendant has failed to demonstrate that the legal notice had a tendency to deceive the intended audience.

### c). *Conclusion*

Accordingly, for the reasons stated above, Plaintiff's motion for summary judgment on

Defendant's counterclaim for false advertising is granted, and Defendant's motion for summary judgment is denied.

### 3. Count III – Business and Product Disparagement

In Count III of its amended countercomplaint, Defendant alleges the state-law claim of "business and product disparagement." Plaintiff contends that Michigan does not recognize such a claim, and that Defendant's counterclaim therefore fails as a matter of law. In its response brief, Defendant does not rebut Plaintiff's assertion that Michigan does not recognize the claim of "business and product disparagement," instead arguing that Defendant has stated a claim of "injurious falsehood." However, as Plaintiff points out in its reply brief, this claim does not appear anywhere in Defendant's pleadings. Since Defendant has provided the Court with no basis to assert a new cause of action at this stage of the proceedings, the Court hereby grants Plaintiff's motion for summary judgment with respect to Defendant's counterclaim for business and product disparagement.

### 4. Count IV - Interference with Contractual Relations

In Count IV of Defendant's amended countercomplaint, Defendant claims that Plaintiff's distribution of the legal notice tortiously interfered with Defendant's contractual relations. To succeed on this claim, Defendant must prove: (1) the existence of a contract; (2) breach of the contract; and (3) an unjustified instigation of the breach by Plaintiff. *Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 366; 695 N.W.2d 521 (2005). "'One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.'" *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251

Mich. App. 125, 131; 649 N.W.2d 808 (2002) (quoting *Feldman v. Green*, 138 Mich. App. 360, 378; 360 N.W.2d 881 (1984)). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v. R L Polk Co.*, 193 Mich. App. 1, 12-13; 483 N.W.2d 629 (1992). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l*, 251 Mich. App. at 131 (citations omitted).

Here, Plaintiff has not denied the existence of a contract between Defendant and Meijer for the sale of Defendant's product, nor has Plaintiff denied that a breach occurred. Rather, Plaintiff contends that its legal notice did not *instigate* a breach of contract and that its conduct in distributing the legal notice was not per se wrongful or done with malice. In its response, Defendant does not argue that Plaintiff's conduct in distributing the legal notice was wrongful per se. Instead, Defendant contends that "actual malice is substantiated by Mr. Bhargava's own admissions." However, Defendant does not provide the Court with any citations to Mr. Bhargava's alleged admissions or any other evidence or argument with respect to this issue. Therefore, the Court finds that Defendant has failed to designate specific facts showing that there is a genuine issue for trial. Accordingly, Plaintiff's motion for summary judgment is granted with respect to Defendant's counterclaim for tortious interference with contractual relations.

### 5.    Count V - Interference with Business Relationships

To establish tortious interference with business relationships, Defendant must prove: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of Plaintiff; (3) an intentional interference by Plaintiff inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to Defendant.

*See Badiee*, 265 Mich. App. at 365-66.

Plaintiff argues that there is an absence of evidence to support Defendant's claim that, by distributing its legal notice, Plaintiff *knowingly* interfered with a valid business relationship or expectancy and that Defendant suffered damages as a result. In its response, Defendant identifies business relationships with "Meijer," "Casey's De Moines stores", and "Love's in Marshall, Michigan." With respect to Defendant's relationship with Meijer, Defendant does not rebut Plaintiff's assertion that there is no evidence to support a conclusion that Plaintiff knew of this relationship when it distributed the legal notice. With respect to Defendant's relationships with Casey's De Moines stores and Love's in Marshall, Michigan, Defendant does not rebut Plaintiff's assertion that there is an absence of evidence to support a conclusion that the alleged interference resulted in damage to Defendant. Accordingly, the Court grants Plaintiff's motion for summary judgment as it relates to Defendant's counterclaim for tortious interference with business relationships.

### 6.  Counts VI and VII - Antitrust

In Counts VI and VII of Defendant's amended countercomplaint, Defendant alleges that Plaintiff violated Section 2 of the Sherman Act, 15 U.S.C. § 2, both in fact and by attempt. Section 2 of the Sherman Act provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2. "Section 4 of the Clayton Act permits a private suit for violations of § 2 and the

16

recovery of treble damages to those who succeed on their claims under the Sherman Act." *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 485 F.3d 880, 887 (6th Cir. 2007) (citing 15 U.S.C. § 15). A successful claim under Section 2 of the Sherman Act requires a two-pronged showing: "(1) the possession of monopoly power in a relevant market; and (2) the willful acquisition, maintenance, or use of that power by anti-competitive or exclusionary means as opposed to 'growth or development resulting from a superior product, business acumen, or historic accident.'" *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002) (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 595-96 (1985)). "In addition, in this circuit, an antitrust [claimant] must show that (1) the alleged violation tended to reduce competition overall and (2) the [claimant]'s injury was a consequence of the resulting diminished competition." *J.B.D.L. Corp.*, 485 F.3d at 887 (citing *Conwood*, 290 F.3d at 788-89). Moreover, the claimant "bears the burden of showing that the alleged violation was a material cause of its injury, a substantial factor in the occurrence of damages or that the violation was the proximate cause of the damage." *Conwood*, 290 F.3d at 788. "The [alleged perpetrator]'s actions need not be the sole proximate cause of any alleged injuries, but 'must be proved as a matter of fact and with a fair degree of certainty.'" *J.B.D.L. Corp.*, 485 F.3d at 887 (quoting *Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 990 (6th Cir. 2001)).

Here, Defendant contends that Plaintiff violated Section 2 of the Sherman Act based on the following allegedly anti-competitive conduct: (1) asserting a fraudulently obtained supplemental trademark registration; (2) false advertising in connection with the legal notice; (3) offering incentives to retailers for superior product placement; (4) requesting that its retailers sell its product at the exclusion of other energy shot products; and (5) registering the "6hourpower.com" and

"sixhourpower.com" internet domain names. In its present motion, Plaintiff argues that summary judgment is appropriate because Defendant's requested damages derive solely from Plaintiff's distribution of the legal notice, and that its conduct in distributing the legal notice cannot provide the basis for a claim under Section 2 as a matter of law. For the following reasons, the Court agrees with Plaintiff.

### a).    Causation and Damages

Plaintiff has presented evidence showing that Defendant's antitrust counterclaims seek damages, exclusive of treble damages, in the amount of $3.4 million. According to the deposition testimony of Defendant's damages expert, Carl Degen, the $3.4 million damages figure is solely related to the effect of Plaintiff's distribution of the legal notice: "[I]t's my opinion that the result of the letter was a loss of 3.4 million dollars . . . My damages calculation of 3.4 million is all of the losses suffered by [Defendant] as a result of the letter." *See* Degen Dep. at 20-23. In its response, Defendant states that Plaintiff "misrepresents that [Defendant]'s damages 'are based solely on the false advertising/Letter.'" In support of this assertion, Defendant argues that in pages 3-4 of Degen's expert report, Degen "specifically states that the 3.4 million calculation of damages is the aggregate damage caused by all conduct of which [Defendant] has complained and the result of the anticompetitive conduct as a whole." Defendant offers no other argument or evidence in support of this assertion. After reviewing pages 3-4 of Degen's report, the Court was unable to find any statements supporting Defendant's assertion. Thus, while Defendant has alleged five anti-competitive acts, it has only demonstrated that one of those acts—distribution of the legal notice—is a material cause of its alleged antitrust injury.

### b).    Commercial Advertising Presumption

"To survive summary judgment . . . a [claimant] must allege facts sufficient for a jury to find that the defendant acquired, maintained, or attempted to acquire a monopoly through actions *harmful to competition*. *See Am. Council of Certified Podiatric Physicians and Surgeons*, 323 F.3d at 370 (emphasis added). According to the Sixth Circuit, "[a]n antitrust claim premised primarily on advertising or speech must overcome a presumption that such advertising or speech had a *de minimis* effect on competition." *Id.* To rebut the *de minimus* presumption, a claimant must demonstrate that "(1) the advertising was *clearly false*, and (2) it would be difficult or costly for the [alleged perpetrator] to counter the false advertising." *Id.* at 371 (emphasis added).

For the reasons discussed in Part IV(B)(2)(a), *supra*, Defendant has failed to demonstrate that the legal notice was clearly false. Thus, the Court finds that Defendant has failed to rebut the presumption that the legal notice had a *de minimus* effect on competition. Accordingly, the Court grants Plaintiff's motion for summary judgment with respect to Defendant's antitrust counterclaims.

### 7.     Count VIII - MCPA

In Count VIII of Defendant's amended countercomplaint, Defendant claims that Plaintiff violated the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.903, which prohibits "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce," when it distributed the legal notice to retailers. Plaintiff avers that summary judgment is appropriate with respect to this claim because (1) the MCPA is intended to protect consumers in their purchase of goods, while Plaintiff distributed the legal notice only to retailers, and (2) Defendant's counterclaim is improperly pleaded, inasmuch as Defendant has failed to "indicate which of the MCPA's 37 provisions its claim is asserted under." *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim

showing that the pleader is entitled to relief.").

In its response, Defendant argues that the legal notice affected consumers even though it was distributed solely to retailers, but Defendant does not respond to Plaintiff's assertion that its counterclaim is improperly pleaded. Defendant has yet to identify which of the MCPA's provisions its counterclaim is asserted under, and Defendant has not provided the Court with an explanation for this decision. Therefore, the Court can only assume that Defendant concedes this issue and agrees that it has not properly pleaded its claim. *See Center For Biological Diversity*, 2009 WL 3241607, at *3. Accordingly, the Court hereby grant's Plaintiff's motion for summary judgment with respect to Defendant's counterclaim under the MCPA.

## C.    INFRINGEMENT OF THE 5-HOUR ENERGY TRADEMARK

The parties have filed cross-motions for summary judgment with respect to whether Defendant's use of the 6 Hour POWER mark infringes Plaintiff's common law trademark rights in the 5-hour ENERGY mark.

The Lanham Act prohibits the use of any word, term, or name which "is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a). To prevail on its trademark infringement claim, Plaintiff must show that Defendant's mark creates a likelihood of confusion regarding the origin of the goods offered by Plaintiff and Defendant. *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002). In determining whether a likelihood of confusion exists, the Sixth Circuit considers the following factors relevant:

> (1) the strength of the plaintiff's mark, (2) the relatedness of the goods or services offered by the plaintiff and the defendant, (3) the similarity of the marks, (4) any evidence of actual confusion, (5) the marketing channels used by the parties, (6) the probable degree of purchaser care and sophistication, (7) the defendant's intent in selecting its mark, and (8) the likelihood of either party expanding its

product line using the marks.

*Therma-Scan, Inc.*, 295 F.3d at 630. While not all of the factors are relevant in every case, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.* (citation omitted). Whether confusion exists "is a mixed question of fact and law," but the ultimate determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion. *Id.* at 630-31.

In considering the above factors, the Court finds that factors two, five and six weigh in favor of Plaintiff; the products are related in that they are both two-ounce energy beverages, the products are sold using similar marketing channels, *i.e.*, convenience stores, and consumers often purchase the products as an "impulse buy" without great care. Also, since neither party addressed the eighth factor with any detail in their briefing, the Court concludes that this factor is not relevant to this case.

As to the first factor, the strength of Plaintiff's mark, the Court finds that it weighs in favor of Defendant:

> Trademarks are generally categorized as fanciful, arbitrary, suggestive or descriptive. A "fanciful" mark is a combination of letters or other symbols signifying nothing other than the product or service to which the mark has been assigned (*e.g.*, Exxon, Kodak). An "arbitrary" mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached (*e.g.*, Camel cigarettes or Apple computers). Fanciful and arbitrary marks are considered to be the "strongest" or most distinctive marks. Encroachment on a strong mark tends to produce the greatest likelihood of confusion. "Suggestive" and "descriptive" marks either evoke some quality of the product (*e.g.*, Easy Off, Skinvisible) or describe it directly (*e.g.*, Super Glue). Such marks are considered "weaker," and confusion is said to be less likely where weak marks are involved.

*Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987). Given the descriptive nature of Plaintiff's mark, *i.e.*, that it provides users with five hours of energy, the mark

itself has little strength. Plaintiff relies on *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504 (6th Cir. 2007), for the proposition that "[e]ven a descriptive mark can be a strong mark with a showing of acquired distinctiveness" and secondary meaning. *Id.* at 513 ("A descriptive mark achieves secondary meaning when 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product.'") (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)). However, *Leelanau Wine Cellars* discusses acquired distinctiveness and secondary meaning only in connection with the initial question of whether a mark is entitled to trademark protection in the first place. *Id.* at 513. ("Marks that are descriptive are not inherently distinctive but may enjoy the benefit of protection if they develop a 'secondary meaning.'") (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). Significantly, *Leelanau Wine Cellars* specifically rejects the argument that a descriptive mark is strong because it has secondary meaning. *Id.* at 516 ("LWC misreads *Wynn II* to state that '[a] trademark that is descriptive and has secondary meaning is a 'relatively strong' mark.'") (quoting *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595 (6th Cir. 1991) (internal quotations omitted)).

With respect to the third factor, the similarity of the marks, the Court finds that this weighs heavily in favor of Defendant, as the marks are decidedly dissimilar. The only word shared by both marks is the word "hour," which is the least prominent word on each mark. *See Little Caesar Enters., Inc.*, 834 F.2d at 572 (finding "Little Caesar" and "Pizza Caesar USA" to be dissimilar in sound and appearance despite sharing the word "Caesar"). The fonts are also very different when viewed as they appear in the marketplace; 5-hour ENERGY is italicized, written in black, and outlined with a yellow shadow line, while 6 Hour POWER is not italicized, contains no hyphen

between 6 and Hour, and is not outlined with any shadow.  Furthermore, the 6 Hour POWER mark is prominently preceded by Defendant's registered trademark, "STACKER 2®," thus lessening the potential for confusion. *See Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1441 (S.D. Ohio 1990) ("The house mark of a company tends to de-emphasize the contested mark as a source of the goods or services.") (citing *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1265 (6th Cir. 1985)).

With respect to the fourth factor, actual confusion in the marketplace, the Court finds that this weighs in favor of Defendant.  While evidence of actual confusion is certainly probative of a likelihood of confusion, "it does not follow that any type or quantum of such evidence is entitled to significant weight in the determination."  *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1110 (6th Cir. 1991).  "Where the parties have been doing business in the same area for some time and where they have advertised extensively, isolated instances of actual confusion are not conclusive or entitled to great weight in the determination." *Id.* (citations omitted). "Indeed, the existence of only a handful of instances of actual confusion after a significant time or a significant degree of concurrent sales under the respective marks may even lead to an inference that no likelihood of confusion exists." *Id.*  "Perhaps as important as the number of instances of confusion are the kinds of persons confused and degree of confusion. 'Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight,' while chronic mistakes and serious confusion of actual customers are worthy of greater weight." *Id.* (quoting *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982)) (internal citation omitted).

Plaintiff first argues that a survey conducted by one of its experts found a 38.5% likelihood

of confusion. Defendant responds that the survey should be given little, if any, weight due to flaws in the survey's methodology. Specifically, Defendant claims that the survey was based on questions that were highly leading. Plaintiff does not rebut Defendant's asserted flaws, arguing only that alleged flaws go to the weight of the evidence, rather than its admissibility, and that Defendant lacks empirical evidence to support its claim.

"Where a survey presented on the issue of actual confusion reflects methodological errors, a court may choose to limit the importance it accords the study in its likelihood of confusion analysis." *Leelanau Wine Cellars,* 502 F.3d at 518 (district court did not err in refusing to give significant weight to a survey that (1) failed to include potential purchasers, (2) did not replicate market conditions, and (3) used suggestive and misleading questions). Since Plaintiff has not rebutted Defendant's assertion that the survey is flawed for having utilized "highly leading" questions, the Court does not give significant weight to the survey.

Plaintiff also attempts to show actual confusion through evidence that Defendant's employees received inquiries from customers questioning whether 6 Hour POWER is made by the same company as 5-hour ENERGY. However, the Court finds that mere inquiries such as these are insufficient to demonstrate actual confusion. First, the inquires do not support a finding that the customers believed that 6 Hour POWER was made by Plaintiff, and second, the inquiries suggest that the customers may have been aware of different product sources. *See Duluth News-Tribune v. Mesabi Publ. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("The question to the reporter who was asked to specify which News-Tribune he worked for indicates a distinction in the mind of the questioner, rather than confusion.").

Plaintiff also attempts to show actual confusion through the accounts of three, as Plaintiff

refs to them, "third party witnesses." One such witness, Alvin Schwapp, who had never purchased either product but had seen 5-hour ENERGY on commercials and in stores, sent an e-mail to Plaintiff complaining about a 6 Hour POWER television commercial. Another witness, Kyle Litz, e-mailed Plaintiff to complain when he felt nauseous after consuming 6 Hour POWER. The third witness, Jacqueline Debruler, a buyer at Meijer, stated during her deposition that it was her belief that Meijer sold a product known as "5 hour power," and later stated, "I guess I thought they were interchangeable terms," when referring to 5-hour ENERGY, 5 hour power, and 6 Hour POWER. However, the Court finds that this evidence of confusion is entitled to little weight. As to Schwapp and Debruler, it is apparent that both individuals were only casually acquainted with the products at the time they were confused. As to Litz, he stated in his deposition that he mistakenly contacted Plaintiff, and that he did not actually believe 6 Hour POWER was made by Plaintiff at that time.

Lastly, Plaintiff seeks to demonstrate actual confusion through an "admission log" containing reports of forty alleged instances of consumer confusion. Defendant contends that the confusion log should be given little weight, as many of the instances are based on inadmissible hearsay, *i.e.*, reports from individuals that various other unnamed individuals reported confusion, and because the alleged incidents are *de minimus* in light of the millions of products sold over the years. The Court agrees. Plaintiff does not rebut Defendant's claim that many of the instances of reported confusion are hearsay, nor does Plaintiff explain how the remaining instances are anything more than isolated, short-lived accounts reported by people only casually acquainted with the products. Thus, the Court finds that the few actual instances of confusion reported by Plaintiff are insignificant in light of the duration of concurrent sales, such that this factor weighs in favor of Defendant.

Regarding the seventh factor, Defendant's intent in selecting its mark, the Court finds that

this weighs in favor of Defendant. In considering this factor, the Court must determine whether "the mark was adopted with the intent of deriving benefit from the reputation of the plaintiff." *Frisch's Restaurants Inc.*, 670 F.2d at 648. Defendant asserts that it included the word "POWER" in its mark due to success it had with a previous line of energy products sold under the rhyming name "TOWER OF POWER". Defendant also asserts that it included the words "6 Hour" in its mark based on research indicating that one of the product's ingredients, caffeine, has effects in the human body lasting approximately six hours, and because it desired another rhyming name similar to TOWER OF POWER. Given Defendant's previous use of the word POWER in connection with the sale of energy products, as well as Defendant's previous use of a term that rhymes with POWER, the Court finds that Defendant has presented credible evidence that it did not choose the 6 Hour POWER mark to intentionally copy Plaintiff's mark. Plaintiff contends that the Court may infer intent from Defendant's knowledge of Plaintiff's mark and the similarity of the mark chosen by Defendant. However, as discussed *supra*, the Court does not find that the marks are sufficiently similar to draw such an inference.

Having considered the above eight factors together, the Court finds that no genuine issues of material fact are present regarding the likelihood of confusion. Pivotal in the Court's decision is the dissimilarity between the marks, especially when combined with the descriptive nature of Plaintiff's 5-hour ENERGY mark. *See Little Caesar Enters., Inc.*, 834 F.2d at 572 ("Little Caesar has a relatively strong mark, the products and services involved are similar, and the level of consumer care is low. On the particular facts before us, however, the third factor seems more significant; we think the marks are sufficiently distinct to make confusion unlikely."). *See also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (noting "the

undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first" and that there is "no indication that the [Lanham Act] was meant to deprive commercial speakers of the ordinary utility of descriptive words").

The Court is unwilling to hold that there is a likelihood of confusion merely because Defendant's mark, like Plaintiff's mark, describes the number of hours of energy that it will provide, especially where one focuses on "ENERGY" and the other focuses on "POWER." To hold otherwise would, in essence, give Plaintiff a monopoly on the use of all marks in connection with energy products that describe the amount of hours or other denomination of time for which the products function. The Court finds the marks at issue in this case similar to the abundance of marks utilized in connection with "dollar" stores, wherein all products are sold for $1.00. Marks that include the word "dollar" describe what kind of store exists, yet the mark for each dollar store is not confusingly similar to the next merely because each contains the word "dollar."

Accordingly, the Court denies Plaintiff's motion for summary judgment on its trademark infringement claim, and the Court grant's Defendant's motion for summary judgment.[3]

## D.    DEFENDANT'S MOTION TO STRIKE EXHIBITS RELIED UPON BY PLAINTIFF IN DKTS 131-133

Defendant has filed a motion to strike exhibits relied upon by Plaintiff in its briefs in support of its motions (dkts 131-133) for summary judgment [dkt 169] based on Plaintiff's alleged discovery abuses. Since the challenged exhibits were not relevant to the Court's disposition of Plaintiff's

---

[3] Since the Court grants Defendant's motion for summary judgment on Plaintiff's Count II, the Court need not decide Defendant's motion to dismiss Count II as a sanction for Plaintiff's alleged discovery violations. Accordingly, Defendant's motion for sanctions [dkt 192] is denied as moot. For the same reason, Defendant's motion to strike exhibits relied upon by Plaintiff in its response brief to Defendant's motion for summary judgment [dkt 208] is denied as moot.

motions for summary judgment, Defendant's motion to strike [dkt 169] is denied as moot.

E.    **DEFENDANT'S MOTIONS TO STRIKE EXPERT TESTIMONY**

Defendant filed a motion to strike the testimony of Dr. Dan Sarel [dkt 202] and a motion to strike the testimony of Drs. Michael Rappeport and Howard Marylander [dkt 203]. Since all claims have been dismissed, Defendant's motions to strike [dkts 202 and 203] are denied as moot.

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for partial summary judgment of Defendant's ninth counterclaim [dkt 131] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment on Counts I-VIII of Defendant's Amended Countercomplaint [dkt 132] is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion to strike exhibits relied upon by Plaintiff in Dkts 131-133 [dkt 169] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment for false advertising [dkt 135] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment for trademark infringement [dkt 133] is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment on Plaintiff's trademark infringement claim [dkt 137] is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion for sanctions [dkt 192] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motion to strike [dkt 202] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motion to exclude testimony [dkt 203] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motion to strike exhibits relied on by Plaintiff in dkt 158 [dkt 208] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motions for leave to file briefs in excess of the page limits set forth in the Local Rules [dkts 136, 188 and 213] are GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motions for leave to file briefs in excess of the page limits set forth in the Local Rules [dkts 156, 199 and 226] are GRANTED.

IT IS FURTHER ORDERED that since this opinion and order dismisses each of Plaintiff's claims and each of Defendant's counterclaims, this case is now closed.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff                              
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  September 15, 2010




CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 15, 2010.

S/Marie E. Verlinde                              

29

Case Manager
(810) 984-3290